K. WAMBLE v. W. A. GRAVES, ADM'R.

(No. 2716, Op. Book No. 4.)

ERROR from Brazos County.   Opinion by WHITE, P. J.

§ 481. *Death of plaintiff after rendition of judgment and pending the motion for new trial; its effect on subsequent proceedings considered with reference to appeals and writs of error.*  On the 23d of January, 1882, the verdict was returned and judgment rendered. Motion for new trial was filed by defendant on the same day. Ritchey, the plaintiff, died on the 29th of January, before the motion for new trial had been determined, and whilst it was still pending. After Ritchey's death (on the 4th of February) the motion for new trial was overruled, to

which defendant excepted, gave notice of appeal, prepared and filed his various bills of exception and his statement of facts. The case, however, was not brought up on appeal, but is now prosecuted by writ of error.

It is contended by defendant in error that all the proceedings had subsequent to Ritchey's death were erroneous and void, there being no party in court prosecuting the case or representing plaintiff's rights, and that none of these proceedings will be considered by this court.

We have a statute providing that "where in any suit either party shall die between the verdict and judgment, the judgment shall be entered as if both parties were living." [Rev. Stats. art. 1251.] This statute is not directly applicable, it is true, to the facts here shown, inasmuch as the death of Ritchey occurred after the judgment. We are not prepared to say, however, that under this statute the matters occurring on the trial, necessary and incident to its illustration, and going to explain the proceedings had resulting in the judgment, such as bills of exception taken during the progress to rulings upon the admission of the evidence and the statement of facts, showing upon what facts the judgment was based, are not parts and parcels of the judgment itself, essential to its proper understanding and even validity, and which, if from any cause they have not been incorporated into the record before the death of a party, cannot be prepared, certified and filed after as necessary parts of the record, showing the steps taken to procure the judgment. Such bills of exception and statement of facts are not technically "other and new proceedings" taken after the death, but are parts of the trial, and binding upon both parties. It is true they are made out in this instance after the death of one of the parties, but they must of necessity have been made out from matters actually transpiring during the trial within the personal knowledge of the judge, whose province and duty it is to certify such bills, and in justice to the rights of parties to see to it that the record he makes of the trial shall speak the

truth with regard to his administration of the law per-
taining to those rights. And we see no reason why, in
such cases of necessity, the judge cannot make out and
certify a proper statement of the facts in the same man-
ner and to the same extent as he is by law authorized and
required to do in case of failure and disagreement of
parties. We say we cannot see why these things cannot
be done, and especially where a motion for new trial had
been properly and legally made before the death of the
party. But it is said, admitting all this to be true, the
court had no authority *to act upon and render judgment*
on the motion for new trial after the death of one of the
parties; that this was unquestionably "a new proceed-
ing," and being taken without proper parties, was abso-
lutely void. Two days before the court acted upon the
motion for new trial the death of Ritchey was suggested
upon the record. It is a rule well established, that "after
the suggestion upon the record of the death of either
party, it not being controverted, no further proceedings
can be had until a new party can be made." [Sayles &
Bassett's P. & P. § 555, and authorities cited.] Rendition
of a judgment, even upon a pending motion for a new
trial, is undoubtedly a proceeding coming within the rule.
Action upon the motion could and should have been sus-
pended until the legal representative had been made a
party, and then, as if was the case, the motion was
overruled, an appeal might have been properly prose-
cuted. If the case had been prosecuted by appeal imme-
diately after the motion for new trial was overruled,
then we would have been compelled to declare the pro-
ceedings upon and subsequent to the motion absolutely
void.

But the case is not before us on appeal. It is here by
writ of error, duly and legally sued out and served upon
Graves, the appellee, as administrator of Ritchey, after
his appointment and qualification. Such being the case,
we might and can treat all the proceedings subsequent to
the original judgment as void, and still that original judg-

ment and proceedings incident thereto before its rendition be properly before us for decision.

It is shown by the record that the case was tried by the judge without the intervention of a jury, and that upon request of parties he filed in writing, as part of the record, the conclusions of law and fact found by him on the trial. [Rev. Stats. art. 1333.]

These conclusions must certainly have been arrived at before the entry of the original judgment, whether filed before or not, and the judgment must have been rendered upon and in accordance with these conclusions. They were matters which emanated alone from the mind and conscience of the court. Now, suppose we concede that the preparation and filing of the bills of exception and statement of facts, as well as the judgment overruling the motion for new trial, are all illegal and void acts, because done subsequent to Ritchey's death, we still have in the case before us, brought up legitimately by the writ of error, all proceedings up to the original judgment, including the conclusions of law and fact found by the court, and eliminating all subsequent matters complained of, let us see whether error was committed in rendering the original judgment.

§ 482. *Measure of damages for the destruction of an ungathered crop.* In the conclusions of facts and law, as found by the judge, he says: "The court finds that said corn was destroyed in June and July, 1881, and that corn was worth at said time from twenty-five to thirty cents per bushel; that later, to wit, from the last of October, 1881, corn took a rise, and was worth in this market from $1 to $1.25 per bushel, which is the highest market price that corn has reached. The court allows plaintiff $1 per bushel for his corn destroyed." Was the measure of damages the price of the corn at the time it was destroyed, or the highest market value that year?

In the recent case of Sabine & East Texas R. R. Co. v. Joachimi, Chief Justice Willie says: "Damages are allowed for the purpose of placing the injured party as near

as possible in the same condition he was at the moment the injury occurred. Where loss of property has happened, the value of that property at the date of the loss, with interest from that time till judgment, is considered fair compensation." Again he says: "So in Foote v. Merrill, 54 N. H. 490, it is said that the measure of damages in destroying plaintiff's trees was their value as they stood on the land at the time. So in Gresham v. Taylor, 51 Ala. 505, it was suggested that, where growing crops were destroyed, the value of the crops at the time might be taken as the measure of damages, and the amount of probable crop, had not the injury been committed, could not be considered." [Supreme Court, Galveston Term, 1883.]

June 9  1883.                    Reversed and remanded.